UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| STEPHANIE LYNN LICCIARDI AND KERRI LOPEZ | * * * | CIVIL ACTION NO.: |
| VERSUS | * * | SECTION: |
| SIG SAUER, INC. | * * * | JUDGE: |
| | * | MAGISTRATE JUDGE: |

## COMPLAINT FOR DAMAGES

**NOW INTO COURT,** through undersigned counsel, come **STEPHANIE LYNN LICCIARDI** ("Ms. Licciardi" or "Plaintiff") and **KERRI LOPEZ** ("Ms. Lopez") (hereinafter collectively referred to as "Plaintiffs"), who filed this instant Complaint against Defendant, **SIG SAUER, INC.** (hereinafter referred to as "Defendant" or "SAI"), and assert as follows, *to-wit:*

### I. PARTIES

1.  Plaintiff, **STEPHANIE LYNN LICCIARDI,** a natural person of the full age of majority and a citizen and domiciliary of St. Tammany Parish, State of Louisiana.

2.  Plaintiff, **KERRI LOPEZ,** a natural person of the full age of majority and a citizen and domiciliary of St. Tammany Parish, State of Louisiana, who at all relevant times was lawfully married to Ms. Licciardi.

3.  Defendant, **SIG SAUER, INC.,** a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 72 Pease Boulevard, Newington, New Hampshire. Defendant is a "manufacturer" within the meaning of La. R.S. 9:2800.53(1).

## II. JURISDICTION

4. This Court has subject-matter jurisdiction over this action under 28 U.S.C.A. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This case is brought pursuant to the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.51, *et seq.*

5. This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself of the Louisiana market by designing, manufacturing, marketing, selling, and distributing firearms, including the product at issue, that were sold and used in Louisiana.

## III. VENUE

6. Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. §1391(b), given that the events giving rise to this claim occurred within the district of this Honorable Court.

## IV. FACTS AND CAUSES OF ACTION

7. **SAI** designed, manufactured, marketed, sold, and/or placed into the stream of commerce the Sig Sauer Model P320 semi-automatic pistol (the "P320").

8. The P320 was marketed and sold for use by military and law-enforcement personnel, including police officers required to carry and holster the firearm during the course and scope of employment.

9. Plaintiff, Stephanie L. Licciardi, is a Senior Public Safety Officer employed by the LCMC Police Department and was acting within the course and scope of her employment at all relevant times.

10. Plaintiff purchased a Sig Sauer P320 firearm personally, as required by the employer for duty use.

11. Plaintiff is a highly trained and experienced firearm user who has completed formal police academy weapons training, participates in mandatory annual firearms requalification, and has received additional private firearms instruction beyond standard law-enforcement requirements.

12. On October 27, 2025, at approximately 8:00 a.m., Plaintiff was on duty at an LCMC hospital facility located in New Orleans - Orleans Parish, Louisiana.

13. At the time of the incident, Plaintiff was on duty and exiting the behavioral unit after assisting in the de-escalation of a physical altercation.

14. Plaintiff was standing upright in a normal, balanced position when she placed the P320 pistol into a Safariland holster, as weapons are prohibited within the behavioral unit.

15. As the firearm was holstered, and **without any trigger pull or intentional activation**, the firearm discharged a single round.

16. At the time of the discharge, Plaintiff was engaging in a normal, foreseeable use of the firearm, specifically holstering the weapon, in a manner consistent with the product's intended purpose.

17. The uncommanded discharge caused Plaintiff to suffer a gunshot wound to her right thigh, with the bullet exiting near her knee, resulting in severe physical injuries, pain and suffering, medical expenses, emotional distress, and other damages.

18. Plaintiff's finger was not on the trigger, nor did Plaintiff manipulate the trigger in any manner at the time of discharge.

19. Upon information and belief, the bullet was a hollow-point round, which fragmented upon impact. Today, bullet fragments remain lodged in Plaintiff's leg and are currently pressing on nerves, causing chronic pain, neurological symptoms, and difficulty ambulating.

20. Plaintiff now walks with a limp, experiences frequent pain, and has difficulty sleeping due to nerve pain.

21. Plaintiff routinely cleaned and maintained the firearm and made no modifications to the firearm or the holster.

22. The firearm and holster were used exactly as intended and in a foreseeable manner.

23. Plaintiff never received any notice indicating that the Sig Sauer P320 model had been subject to recalls.

24. As a result of the injuries, Plaintiff has been unable to return to work and has suffered substantial wage loss, financial hardship, and emotional distress, among other damages.

## V. LOUISIANA PRODUCTS LIABILITY ACT ("LPLA")

25. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

26. The LPLA provides the exclusive theories of recovery against a manufacturer for damages caused by its product.[1]

27. Defendant designed, manufactured, marketed, and sold the Sig Sauer Model P320 pistol.

28. Defendant is liable under the LPLA as the P320 was **unreasonably dangerous** in one or more of the following respects:

---

[1] La. Stat. Ann. § 9:2800.52

## COUNT I - DESIGN DEFECT[2]

29. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

30. The Sig Sauer Model P320 pistol was unreasonably dangerous in design because its design allowed the firearm to discharge without a trigger pull during foreseeable handling, including holstering.

31. At the time the P320 left Defendant's control, a feasible alternative design existed that would have prevented the uncommanded discharge while maintaining the firearm's utility.

32. The likelihood and gravity of harm posed by the P320's design defect outweighed any utility of the chosen design.

33. The Sig Sauer P320 was designed, assembled, manufactured, sold, supplied, distributed, and placed into the stream of commerce in a defective and unreasonably dangerous condition, and the defective condition existed at the time the product left the control of SAI and remained unchanged through the time of Plaintiff's injury.

34. The defective design was a proximate cause of Plaintiffs' injuries and damages.

## COUNT II - MANUFACTURING DEFECT[3]

35. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

36. SAI manufactures firearms in the United States.

37. The P320 was made for military and police use only.

---

[2] La. Stat. Ann. § 9:2800.56

[3] La. Stat. Ann. § 9:2800.55

38. SAI sold the P320 firearm to Plaintiff.

39. Defendant is liable because SAI engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce firearms, including the P320, which injured Plaintiff.

40. Defendant knew or should have known that the P320 posed a risk of uncommanded discharge without trigger activation.

41. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce.

42. In the alternative, the P320 deviated from Defendant's design specifications and/or performance standards in a manner that rendered the firearm unreasonably dangerous.

43. This deviation existed at the time the firearm left Defendant's control and was a proximate cause of Plaintiff's injuries.

## COUNT III - FAILURE TO WARN[4]

44. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

45. The P320 was unreasonably dangerous due to SAI's failure to provide adequate warnings or instructions regarding the risk of uncommanded discharge without trigger activation.

46. Defendant failed to provide recall notice or corrective instruction to Plaintiff despite having the means to do so, including but not limited to, Ms. Licciardi's contact information.

47. The inadequate warnings were a proximate cause of Plaintiffs' injuries and damages.

---

[4] La. Stat. Ann. § 9:2800.57

## VI. NEGLIGENCE

### (Alternative and Supplemental to LPLA Claims)

48. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

49. At all relevant times, SAI owed Plaintiff a duty to exercise reasonable care in connection with the post-sale conduct, monitoring, warnings, recall implementation, and safety communications related to the Sig Sauer Model P320 firearm.

50. Defendant breached its duties to Plaintiff through negligent acts and omissions that were independent of the firearm's original design and manufacture, including but not limited to the following:

### COUNT I - NEGLIGENT POST-SALE FAILURE TO WARN

51. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

52. SAI knew or should have known, through testing, internal reports, consumer complaints, law-enforcement incidents, and/or prior discharge events, that the P320 firearm posed a risk of uncommanded discharge without trigger activation.

53. Despite SAI's knowledge, Defendant negligently failed to:

   A. Provide adequate post-sale warnings to Plaintiff;

   B. Issue timely, clear, and effective safety communications to Plaintiff;

   C. Ensure that known risks were conveyed in a manner reasonably calculated to Plaintiff; and

   D. Any and all other acts or omissions that may be revealed through discovery and/or proven at trial.

54. SAI's negligent post-sale failure to warn deprived Plaintiff of the opportunity to take additional safety precautions or remove the firearm from service.

### COUNT II - NEGLIGENT RECALL AND
### SAFETY CAMPAIGN IMPLEMENTATION

55. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

56. SAI undertook recall and safety-related actions concerning the P320 platform, thereby assuming a duty to execute such actions with reasonable care.

57. Plaintiff never received any recall or safety notice, despite Defendant possessing the means to notify Ms. Licciardi directly.

58. SAI negligently failed to:

   A. Properly identify all affected firearms;

   B. Provide notice to Plaintiff at her known address and through other available contact information within Defendant's possession and/or control;

   C. Ensure that recall notices reached Plaintiff; and

   D. Any and all other acts or omissions that may be revealed through discovery or proven at trial.

59. SAI's negligent recall execution and deficient safety campaign increased the risk of harm and directly contributed to Plaintiff's injuries.

## COUNT III - NEGLIGENT SAFETY MONITORING AND RISK MANAGEMENT

60. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

61. SAI had a continuing duty to reasonably monitor field performance, incident reports, and safety data related to the P320.

62. SAI breached this duty by failing to timely investigate, analyze, and remediate reports of uncommanded discharges related to the P320.

63. SAI further failed to suspend sales, recommend removal from service, or issue urgent warnings while investigations were ongoing.

## COUNT IV - CAUSATION AND DAMAGES

64. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

65. SAI's negligent acts and/or omissions were a cause-in-fact and legal cause of Plaintiffs' injuries and damages.

66. Plaintiffs' injuries and damages were foreseeable consequences of SAI's negligent post-sale conduct(s).

67. As a direct and proximate result of SAI's negligence, Plaintiffs sustained severe bodily injury, emotional distress, economic losses, loss of consortium, and other damages as previously alleged.

## RESERVATION CLAUSE

68. This negligence claim is pleaded **in the alternative** and **to the extent permitted under Louisiana law**, including for conduct that falls outside the exclusive scope of the Louisiana Products Liability Act.

## VII. LOSS OF CONSORTIUM[5]

69. Plaintiffs incorporate by reference all prior paragraphs and allegations in support of this claim.

70. At all relevant times, Ms. Licciardi was lawfully married to her spouse, **KERRI LOPEZ**, and their marital relationship existed at the time of the incident made the basis of this action.

71. As a direct and proximate result of the injuries sustained by Ms. Licciardi due to Defendant's acts and omissions, **MS. LOPEZ** has suffered loss of consortium, services, and society within the meaning of **Louisiana Civil Code article 2315(B)**.

72. These losses include, but are not limited to, the loss of love, affection, companionship, comfort, assistance, intimate relations, and shared household services that Ms. Licciardi was able to provide prior to the incident at issue.

73. Ms. Licciardi's injuries have substantially interfered with the normal marital relationship, including physical, emotional, and economic aspects of the marriage.

74. The loss of consortium suffered by **MS. LOPEZ** is a foreseeable consequence of Defendant's wrongful conduct and is directly attributable to the injuries inflicted upon Plaintiff.

75. SAI is therefore liable to **MS. LOPEZ** for all damages recoverable under Louisiana law for loss of consortium, services, and society.

---

[5] La. Civ. Code Ann. art. 2315

## VIII. DAMAGES

76. As a direct and proximate result of SAI's conduct, Plaintiffs have sustained the following damages, past and future:

    A. Physical pain and suffering;

    B. Mental anguish and emotional distress;

    C. Medical expenses;

    D. Future medical care;

    E. Disability and impairment;

    F. Loss of enjoyment of life;

    G. Scarring and disfigurement;

    H. Loss of wages;

    I. Loss of consortium; and

    J. Any and all other damages, losses, and injuries that may be revealed through discovery or proven at trial.

## IX. JURY DEMAND

77. Plaintiffs are entitled to and demand a trial by jury on all issues presented herein and as to all Claims.

## X. PRAYER FOR RELIEF

78. **WHEREFORE,** Plaintiffs, **STEPHANIE LYNN LICCIARDI** and **KERRI LOPEZ**, respectfully pray that judgment be entered in their favor and against Defendant, **SIG SAUER, INC.**, awarding all compensatory damages allowed by law, including but not limited to, damages for physical pain and suffering, mental anguish, emotional distress, disability, impairment, loss of enjoyment of life, past and future medical expenses, lost wages, loss of earning

capacity, and all other economic and non-economic losses proven at trial, together with all damages recoverable for loss of consortium, services, and society as permitted under Louisiana law; awarding pre-judgment and post-judgment interest as allowed by law; taxing all costs of court and taxable expenses against Defendant; granting Plaintiffs a trial by jury on all issues so triable as a matter of right; issuing all necessary orders, judgments, and decrees required to fully and fairly adjudicate the rights of the parties; and granting Plaintiffs all other relief, legal and equitable, to which Plaintiffs may be justly entitled under the facts and the applicable law.

Respectfully Submitted,

**KOEPPEL, LLC**

*/s. / Peter S. Koeppel*

**PETER S. KOEPPEL (BAR No. 1465)**
**BIBIANA O. VALLECILLA (BAR No. 40003)**
650 Poydras St. Suite 2150
New Orleans, La. 70130
Telephone: (504)598-1000
Facsimile: (504)524-1024
psk@koeppelllc.com
bvallecilla@koeppelllc.com
***Attorneys for Plaintiffs***

**_PLEASE HOLD SERVICE_**